UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FISHER-PRICE, INC.  and                                    **DECISION**
MATTEL, INC.,                                                     **and**
                                                                        **ORDER**
                                    Plaintiffs and              --------------------------------
                                    Counter Defendants,              **REPORT**
                        v.                                                **and**
                                                                   **RECOMMENDATION**
KIDS II, INC.,
                                                                   **10-CV-00988A(F)**

                                    Defendant and
                                    Counter Claimant.
_____


APPEARANCES:              KENYON & KENYON
                                    Attorneys for Plaintiffs and Counter Defendants
                                    JOHN FLOCK, and
                                    K.  PATRICK HERMAN, of Counsel
                                    One Broadway
                                    New York, New York  10004
                                                and
                                    JOHN R. HUTCHINS, of Counsel
                                    1500 K Street NW
                                    Suite 700
                                    Washington, District of Columbia  20005-1257

                                    HODGSON RUSS LLP
                                    Attorneys for Plaintiffs and Counter Defendants
                                    ROBERT J. LANE, JR., of Counsel
                                    The Guaranty Building
                                    140 Pearl Street
                                    Buffalo, New York  14202-4040

                                    ALSTON & BIRD LLP
                                    Attorneys for Defendant and Counter Claimant
                                    ROBERT LEE, and
                                    SCOTT PATRICK AMY, of Counsel
                                    One Atlantic Center
                                    1201 West Peachtree Street
                                    Atlanta, Georgia  30309-3424

PHILLIPS LYTLE LLP
Attorneys for Defendant and Counter Claimant
MICHAEL JAMES BERCHOU, of Counsel
3400 HSBC Center
Buffalo, New York  14203

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J.  Arcara, on

January 25, 2011, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Plaintiffs' motion for to dismiss Defendant's cross-claim for false marking (Doc. No. 32),

filed October 18, 2011, and on Defendant's motion to stay (Doc. No. 35), filed

November 3, 2011.[1]


## BACKGROUND and FACTS[2]

Plaintiff Fisher-Price, Inc. ("Fisher-Price"), a wholly-owned subsidiary of Plaintiff

Mattel, Inc. ("Mattel") (together, "Plaintiffs"), commenced this action on December 7,

2010, asserting a single claim for relief alleging Defendant Kids II, Inc. ("Kids II" or

"Defendant"), violated United States Patent No. 5,562,548 ("the '548 patent" or the

"patent-in-suit"), issued on October 8, 1996 for an invention denominated as a

"Convertible Child Swing," described as child swing with a convertible seat that can be

configured as a cradle to accommodate very young babies or as a chair for older

---

[1] Although Plaintiffs' motion to dismiss is dispositive, whereas Defendant's motion to stay the litigation is nondispositive, the matters are discussed in this combined Decision and Order and Report and Recommendation in the interest of judicial convenience.

[2] The Facts are taken from the pleadings and motion papers filed in this action.

babies, and that is also removable, allowing the seat to function as a car seat or car bed ("the cradle swing").  The '548 patent is owned by Mattel which has exclusively licensed it to Fisher-Price, thereby granting Fisher-Price the sole right to make, use and sell the cradle swing.  Plaintiffs allege Defendant both directly and indirectly infringed upon the '548 patent by making and selling products embodying one of more claims covered by the '548 patent.  For the alleged infringement, Plaintiffs seek to recover treble damages, an order permanently enjoining Defendant from the continued infringement, and the costs, expenses and attorney's fees incurred in connection with this action.  On February 7, 2011, Defendant filed its answer (Doc. No. 11).

On August 16, 2011, Defendant filed a petition with the United States Patent and Trademark Office ("the Patent Office"), requesting reexamination of Claims 1-4, 6, 10, 12-13, and 15-16 of the '548 patent.  On August 19, 2011, after seeking and obtaining leave from the court, Defendant filed its Amended Answer (Doc. No. 26) ("Amended Answer"), in which Defendant asserts three counterclaims including the Third Counterclaim alleging Fisher-Price engaged in false patent marking in violation of 35 U.S.C. § 292 ("Third Counterclaim").  On September 12, 2011, Plaintiffs filed Fisher-Price and Mattel's Answer to Defendant Kid II's Amended Counterclaims (Doc. No. 28) ("Answer to Counterclaims").  On October 18, 2011, Plaintiffs filed a motion to dismiss the Third Counterclaim (Doc. No. 32) ("Plaintiffs' motion"), supported by the attached Memorandum of Law in Support of Fisher-Price and Mattel's Motion to Dismiss, or Alternatively for Judgment on the Pleadings, with Respect to Kids II's False Marking Counterclaim (Doc.  No.  32-1) ("Plaintiffs' Memorandum"), and exhibits A through F ("Plaintiffs' Exh(s). __").

On October 21, 2011, the Patent Office granted Defendant's request for *ex parte* reexamination of the '548 patent.  On November 3, 2011, Defendant filed a motion to stay litigation pending the Patent Office's reexamination of the '548 patent (Doc. No. 35) ("Defendant's motion"), supported by the attached Declaration of Robert L. Lee, Esq. in Support of Motion to Stay Litigation Pending Reexamination of the Patent in Suit (Doc.  No.  35-1) ("Lee Declaration"), exhibits A through D ("Defendant's Exh(s). __"), and Defendant's Memorandum of Law in Support of Its Motion to Stay Litigation Pending Reexamination of the Patent-in-Suit (Doc. No. 35-6) ("Defendant's Memorandum").

On November 18, 2011, Defendant filed the Declaration of Scott P. Amy, Esq., in Opposition to Plaintiffs' Motion to Dismiss or Alternatively for Judgment on the Pleadings (Doc. No. 40) ("Amy Declaration"), with attached exhibits A through E ("Defendant's Response Exh(s). __"), and Kids II's Memorandum of Law in Opposition to Fisher-Price and Mattel's Motion to Dismiss, or alternatively for Judgment on the Pleadings (Doc. No. 41) ("Defendant's Response").  On November 28, 2011, Plaintiffs filed Fisher-Price and Mattel's Opposition to Defendant's Motion to Stay Litigation Pending Reexamination of the Patent-in-Suit (Doc. No. 45) ("Plaintiffs' Response"), with the attached Declaration of K. Patrick Herman in Support of Fisher-Price and Mattel's Opposition to Defendant's Motion to Stay Litigation Pending Reexamination of the Patent-in-Suit (Doc. No. 45-1) ("Herman Declaration"), with attached exhibits A through G (Plaintiffs' Response Exh(s). __").

On November 30, 2011, Plaintiffs filed Fisher-Price and Mattel's Reply Brief in Support of Their Motion to Dismiss or Alternatively for Judgment on the Pleadings, with

Respect to Kid II's False Marking Counterclaim (Doc. No. 47) ("Plaintiffs' Reply").  On

December 5, 2011, Defendant filed Kids II's Reply Memorandum of Law in Support of

Its Motion to Stay Litigation Pending Reexamination of the Patent-in-Suit (Doc. No. 49)

("Defendant's Reply"), and the Reply Declaration of Scott P. Amy, Esq., in Support of

Kids II Motion to Stay Litigation Pending Reexamination of the Patent-in-Suit (Doc. No.

50) ("Amy Reply Declaration"), with attached exhibits A through D ("Defendant's Reply

Exh(s). __").  Oral argument was deemed unnecessary.

      Based on the following, Plaintiffs' motion should be GRANTED without prejudice;

Defendant's motion is DENIED.


## DISCUSSION

**1.     Motion to Stay Litigation**

      Defendant moves to stay litigation pending the PTO's *ex parte* reexamination of

the '548 patent, arguing that because the PTO is reexamining a number of the '548

patent's claims including, *inter alia*, Claims 1 and 10 ("Claims") which are the only

Claims Plaintiffs have identified as being infringed, the pending reexamination will

simplify the issues before the court, thus saving both the court and the parties time and

expense, and that Plaintiffs will not be prejudiced by a stay because the parties have

engaged in only minimal discovery.  Defendant's Memorandum at 1; Defendant's Exh.

A at 3 ("Fisher-Price and Mattel's Preliminary Infringement Contentions").  In opposition,

Plaintiffs assert they would be unduly prejudiced by a stay which would prevent

Plaintiffs from obtaining the requested permanent injunction against Defendant, thereby

dispossessing Plaintiffs of the '548 patent's value which is set to expire in less than

three years, and that, contrary to Defendant's assertion, significant discovery in this action has occurred with document production complete except for those documents for which the parties have recently obtained a protective order.  Plaintiffs' Response at 2-3. In further support of its motion, Defendant maintains Plaintiffs' assertions of prejudice are not supported by allegations of lost market share and sales or price erosion, and disputes Plaintiffs' asserted concerns of lost market share and sales given that Plaintiff, despite learning of Defendant's alleged infringing products in September 2009, did not file the instant action until December 7, 2010, and have not sought a preliminary injunction.  Defendant's Reply at 2.  Defendant further maintains that Plaintiffs have failed to diligently pursue discovery.  *Id*. at 3.

In a reexamination procedure, the PTO reconsiders the validity of an existing patent.  35 U.S.C. §§ 301 *et seq*.  "One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding."  *Gould v. Control Laser Corporation*, 705 F.2d 1340, 1342 (Fed.Cir.), *cert. denied*, 464 U.S. 935 (1983).  Because the reexamination of a patent's validity can facilitate or eliminate the need for trial of one or more issues, parties often seek to stay patent infringement actions pending the outcome of patent reexamination proceedings, especially where the litigation is at an early stage without substantial progress toward trial.  *See*, *e.g.*, *Spread Spectrum Screening LLC v. Eastman Kodak Company*, __ F.R.D. __; 2011 WL 3796182, at * 3 (W.D.N.Y. Aug.  26, 2011) (collecting cases).

A motion to stay litigation pending the PTO's reexamination of a patent-in-suit is

committed to the district judge's sound discretion.  *K.G. Motors, Inc. v. Specialized Bicycle Components, Inc.*, 2009 WL 2179129, at *2 (W.D.N.Y. July 22, 2009) (citing *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999), *appeal dismissed by* 243 F.3d 554 (Fed.Cir. 2000)).  In determining whether to grant a stay, courts consider the following factors:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Xerox Corp.*, 69 F.Supp.2d at 406 (citations omitted).[3]

In the instant case, these factors weigh against granting a stay.

First, Plaintiffs assert, Plaintiff's Response at 5, and Defendant does not dispute, the '548 patent is set to expire in November 2014.  Because the patent reexamination process, including an appeal, on average, takes more than four years to complete,[4] which Defendants also do not dispute, as a practical matter, if the matter were stayed, as Defendant requests, Plaintiff would be without the benefit of the patent, and the stay would also eliminate any opportunity for Plaintiff to obtain injunctive relief.   It is, of course, well established that "[t]he essential attribute of a patent grant is that it provides

---

[3] Although not separately enumerated as a relevant factor, the court also considers as relevant to the decision whether to stay litigation pending reexamination the time remaining before the patent–in-suit expires.

[4] Both Plaintiffs and Defendant agree that the *ex parte* reexamination process requires an average of 25.4 months to complete, Plaintiffs' Response at 5; Defendant's Exh.  D at 3, with Plaintiffs asserting, unchallenged by Defendant, that an appeal would take an additional 24 months.  Plaintiff's Response at 5.  The PTO's decision upon *ex parte* reexamination of a patent, however, can be appealed only by the patentee.  35 U.S.C. § 306 (providing that patent owner may appeal *ex parte* reexamination procedures).  Accordingly, the additional 24 months for an appeal of the PTO's decision would be necessary only if the PTO rules against Plaintiff by rejecting any of the '548 patent's claims.

a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corporation*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (citing 35 U.S.C. § 154(a)(1) (providing that "[e]very patent shall . . . grant to the patentee . . . the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States . . . .").  As such, "infringement may cause a patentee irreparable harm not remedied by a reasonably royalty." *Acumed LLC*, 551 F.3d at 1328.  Even a patentee's licensing of the subject patent to a competitor in exchange for royalties will not establish a lack of irreparable harm by infringing activity by another, unlicensed competitor. *Id*. at 1328-29.  Thus, immediate equitable relief to prevent competing infringement is likely to be essential to a patentee's right to exclusive exercise of the patent.

Although to date, Plaintiffs have identified only Claims 1 and 10 of the '548 patent as being infringed upon by Defendant, the PTO is reexamining, at Defendant's request, Claims 1-4, 6, 10, 12-13, and 15-16 of the '548 patent.  A stay of litigation pending the PTO's completion of the reexamination process would deprive Plaintiff of the protection provided by the patent-in-suit, *i.e.*, the '548 patent, including any accompanying good will and reputation, throughout the reexamination of all claims subject to the reexamination.  Further, the PTO's rejection of any one of the eleven Claims subject to reexamination, whether or not at issue in the instant litigation, will trigger Plaintiffs' right to appeal.[5]  As Defendant points out, Defendant's Memorandum

---

[5] The court notes that Defendant's request for *ex parte* reexamination of an additional nine Claims of the '548 patent, beyond the two Plaintiffs have identified as being infringed, implies the question of whether Defendant's request for *ex parte* reexamination is, in actuality, a delaying tactic.

at 1, 77% of all patents subjected to *ex parte* reexamination emerge either canceled or amended.  *See Inter Partes* Reexamination of Patents: An Empirical Evaluation, 15 Texas Intellectual Property Law Journal 1, 5 (Fall 2006) (reporting PTO statistics of *ex parte* reexaminations conducted between 1981 and 2003 show 26 % proceedings resulted in all claims confirmed, 10 % resulted in all claims canceled, and 64 % resulting in claims amended and allowed).  Given the likelihood that the *ex parte* reexamination process, including an appeal, will continue beyond the expiration of the '548 patent, this factor weighs in favor of rejecting a stay.

   With regard to the second factor, the court does not find that the PTO's decision following *ex parte* reexamination of the patent-in-suit is likely to narrow or simplify the issues for trial.  In particular, whereas "[*i*]*nter parte* reexaminations provide a third party the right to participate in the reexamination process and, thus, have a *res judicata* effect on the third party requester in any subsequent or concurrent civil action . . . . [*e*]*x parte* reexaminations . . . do not bar the requestor from relitigating the exact same issues in district court."  *eComsystems, Inc. v. Shared Marketing Services, Inc.*, 2011 WL 280942, at * 2 (M.D.Fla.  Jan.  26, 2011) (citing 35 U.S.C. §§ 314-315).  *See also Nidec Corporation v.  LG Innotek Co., Ltd.*, 2009 WL 3673433, * (E.D.Tex.  2009) ("the *ex parte* nature of the reexamination does not prevent Defendants from asserting the same issues of invalidity currently before the USPTO.  Thus, simplification of the issues in this litigation will not necessarily result from reexamination."); *Tomco2 Equip Co.  v. S.E. Agri-Systems, Inc.*, 542 F.Supp.2d 1303, 1309 (N.D.Ga.  2008) ("an *inter partes* reexamination, in contrast to the *ex parte* reexamination, has great potential for

simplifying issues.  It has *res judicata* effect, and it allows the court to consider the expertise of the PTO before making its own conclusions."); and *Anascape, Ltd. v. Microsoft Corp.*, 475 F.Supp.2d 612, 616 (E.D.Tex. 2007) ("the newer *inter partes* procedure is more likely to result in simplification, because both parties are bound by the result. . . .").

Moreover, the supposed factor of "'awkwardness'", *i.e.*,  if the PTO and the district court reach different conclusions in an infringement action, is "'more apparent than real.'"  *Xerox Corp.*, 69 F.Supp.2d at 407 (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988)).  In particular, "[t]he two forums take different approaches in determining the invalidity and on the same evidence could quite correctly come to different conclusions." *Id*.  In litigation before the district court, "a patent is presumed valid and the party asserting invalidity must prove the facts to establish invalidity of each claim by clear and convincing evidence." *Xerox Corp.*, 69 F.Supp.2d at 407 (citing 35 U.S.C. § 282, and *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 974 (Fed.Cir. 1986)).  In a reexamination process before the PTO, however, "there is no presumption of validity and there must only be a preponderance of the evidence to show nonpatentability before the PTO may reject the patent claim(s)." *Id*. (citing *Quigg*, 849 F.2d at 1427).  Then, even where the PTO's determination by preponderance of the evidence invalidates a patent, no inconsistency arises upon a contrary finding by the district court based on clear and convincing evidence.  Furthermore, if the district court determines a patent-in-suit is not invalid, the doctrine of collateral estoppel will not bar the PTO's continuation of the reexamination process because of the two different standards of proof for determining invalidity.  *Id*. at 407-08 (citing *Quigg*, 849 F.2d at

1429 n. 3).  Nevertheless, if the district court determines the patent is invalid, and such determination either is upheld on appeal, or is not appealed, the district court's order will have *res judicata* effect on the PTO's reexamination process provided the "'patentee has had a full and fair chance to litigate the validity of his patent.'"  *Id*. Similarly, in the instant case, the possibility that the parties will be subject to conflicting results in parallel proceedings before this court and the PTO is "more apparent than real."  *Quigg*, 849 F.2d at 1428.  The second factor thus weighs against a stay.

As for the third factor, although discovery has not been completed, nor the case yet scheduled for trial, contrary to Defendant's assertion, substantial discovery has taken place, including interrogatories, formal infringement and validity contentions, and document production.  Plaintiffs' Response at 10-11.  Although Defendant asserts that little fact discovery has been completed because Fisher-Price did not engage in any discovery until after Defendant's petition for reexamination was granted, Defendant's Reply at 6-7, that fact alone is not enough to warrant a stay given that the first two factors, as well as the fact that little time remains before the '548 patent expires, weigh so heavily in this case against a stay.

Defendant's motion seeking to stay litigation pending the PTO's *ex parte* reexamination of the patent-in-suit is DENIED.


**2.     Motion to Dismiss Third Counterclaim or for Judgment on the Pleadings**

Plaintiffs move to dismiss Defendant's Third Counterclaim asserting a *qui tam* action for false marking in violation of 35 U.S.C. § 292 ("§ 292") on the basis that recently enacted legislation has eliminated such actions.  Plaintiffs' Memorandum at 4.

Plaintiffs further contend that Defendant has failed to sufficiently allege the requisite "competitive injury" for a § 292 claim.  *Id*. at 5-8.  In opposition, Defendant concedes that insofar as its Third Counterclaim may be construed as a *qui tam* action seeking one half of the statutory monetary damages available under § 292, such counterclaim is no longer permitted as a result of its abolishment by the Leahy-Smith America Invents Act ("AIA"), enacted September 16, 2011.  Defendant's Response at 4.  Defendant nevertheless maintains that because the Third Counterclaim seeks to remedy Defendant's own competitive injury attributable to Fisher-Price's alleged false marking, the Third Counterclaim sufficiently states a claim under § 292.  *Id*. at 6-13.  In further support of their motion, Plaintiffs maintain that the Third Counterclaim fails to sufficiently plead a competitive injury in accordance with the heightened pleading standard applicable to § 292 claims.  Plaintiffs' Reply at 2-4.

Preliminarily, the court addresses Plaintiffs' presentation of its motion as one seeking to dismiss the Third Counterclaim pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted or, alternatively, for judgment on the pleadings pursuant to Rule 12(c).  The difference between the two motions is that a motion pursuant to Rule 12(b)(6) seeking dismissal for failure to state a claim is made prior to the filing of an answer to the claim for which dismissal is sought, whereas a motion pursuant to Rule 12(c) seeking judgment on the pleadings is made after the relevant pleadings are closed.  In the instant case, because Plaintiffs, on September 12, 2011, filed their Answer to Counterclaims (Doc. No. 28), including the Third Counterclaim asserted for the first time in Defendant's amended answer (Doc. No. 26), the pleadings are closed and Plaintiffs' motion, filed after their answer to the amended answer, is

considered as seeking judgment on the pleadings.  The difference is, however, merely academic because the same analysis applicable to a Fed.R.Civ.P. 12(b)(6) motion to dismiss applies to a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

In particular, "'[o]n a motion to dismiss or for judgment on the pleadings, [the court] must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"  *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (bracketed material added and additional quotation omitted).  On a motion to dismiss under Rule 12(b), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, __; 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Generally, a motion for judgment on the pleadings must be based upon the pleadings, and not on additional evidence submitted by any party.  *See Sira v. Morton*, 380 F.3d 57, 66-67 (2d Cir. 2004) (observing that where moving party submits material outside the pleadings in support of motion for judgment on the pleadings, the motion

13

should be converted to a motion for summary judgment).  "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Sira*, 380 F.3d at 67 (citing cases and Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")).  Where, however, a movant relies on papers outside the pleadings which have not been incorporated by reference, the motion must be converted to one for summary judgment.  *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings. . . .").

In the instant case, although in connection with Plaintiffs' motion, Plaintiffs and Defendant have submitted for the court's consideration exhibits neither attached to, incorporated by reference into, nor integral to the Complaint, *see*, *e.g.*, Plaintiffs' Exhs. A through F; Defendant's Exhs. A through E, such submissions largely consist of copies of legislation and cases cited by the parties in their respective motion papers.  The sole exceptions are Defendant's Exh. A, consisting of Plaintiffs' responses and objections to Defendant's second set of interrogatories, and C, consisting of a copy of a complaint from an unrelated action.  The court, however, has not found these exhibits necessary to resolve the motion and the exhibits are excluded from the court's consideration in resolving the motion, thus obviating the need to convert Plaintiff's motion to one for summary judgment.  Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to *and not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56."  (italics added)).

14

As relevant, § 292(a) prohibits an entity from engaging in false marking, *i.e.*, improperly affixing a patent number onto a product, with the intention of deceiving the public into believing the product is protected by the patent, and any entity engaged in such false marking "[s]hall be fined not more than $ 500 for every such offense."  When Defendant filed the amended answer on August 19, 2011, thereby asserting the Third Counterclaim alleging Fisher-Price had falsely marked competing cradle swing products with the '548 patent in violation of § 292, the statute then provided that a § 292 violation could be sued as a *qui tam* action, specifically providing that "[a]ny person may sue for the [statutory] penalty, in which event one-half shall go to the person suing and the other to the use of the United States."  35 U.S.C. § 292(b) (2010).  On September 16, 2011, § 292 was amended by the AIA which specifically provides that "[o]nly the United States may sue for the penalty authorized by this subsection," 35 U.S.C. § 292(a), thereby precluding *qui tam* actions for § 292 violations.  Accordingly, judgment on the pleadings should be GRANTED in favor of Plaintiffs insofar as Defendant asserts the Third Counterclaim as a *qui tam* action.

Despite eliminating *qui tam* actions for false marking violations, the AIA further amended § 292 by replacing the prior version of § 292(b)[6] with a new provision that "a person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages

---

[6] Prior to the September 16, 2011 amendment, § 292(b) provided for the *qui tam* action that was eliminated by the Act.

adequate to compensate for the injury." 35 U.S.C. § 292(b) (2011).[7]  Plaintiffs argue

that § 292(b)'s competitive injury provision requires that Defendant plead damages with

more specificity than would otherwise be required, including pleading facts indicating

that Defendant actually, rather than potentially, sustained a competitive injury as a

result of Fisher-Price's alleged false markings.  Plaintiffs' Memorandum at 5-9.  In

opposition to Plaintiffs' motion, Defendant asserts that although its Third Counterclaim

was originally asserted as a *qui tam* action, the Third Counterclaim also may be

construed as seeking actual damages "to remedy Kids II's own competitive injury"

attributed to Fisher-Price's alleged false marking of competing cradle swing products,

for which § 292(b) in its present form provides.  Defendant's Response at 2, 6-13.

Defendant characterizes Plaintiffs' argument that Defendant has failed to sufficiently

plead a competitive injury as requiring Defendant "*prove* that it suffered a competitive

injury under the AIA at the initial pleadings stage."  *Id.*[8]  Defendant further maintains

---

[7] Nothing in either the text or legislative history of the AIA suggests any amendment to the two required elements for a § 292 false marking claim, including "(1) marking an unpatented article and (2) intent to deceive the public." *Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1300 (Fed.Cir. 2009) (citing *Clontech Labs. Inc. v. Invitrogen Corp.*, 403 F.3d 1347, 1352 (Fed. Cir. 2005)).  Furthermore, a plain reading of the Third Counterclaim establishes Defendant has alleged Fisher-Price falsely marked certain cradle swing products with the '548 patent "with the purpose of deceiving the public and suppression competition," Amended Answer ¶ 48, and that "Fisher-Price knew or reasonably should have known that the Accused Fisher-Price Swing Products are not covered by any claim of the '548 Patent." Id. ¶ 50.  Accordingly, Defendant has sufficiently alleged both elements for a false marking claim in violation of § 292, and Plaintiffs do not argue otherwise.

[8] Insofar as Defendant maintains, Defendant's Response at 3-4, similar arguments Plaintiffs proffered in opposition to Defendant's motion (Doc. No. 20) seeking leave to file the amended answer asserting the Third Counterclaim were already rejected by the undersigned in granting Defendant's motion to amend by Text Order entered August 12, 2011 (Doc. No. 25), the court's scrutiny on the instant contested motion seeking judgment on the pleadings is aided by the fact that when Defendant sought leave to file the amended answer, the AIA had yet to be finalized and, as such, it's full impact on the then proposed Third Counterclaim was not known such that it was not possible to determine whether the Third Counterclaim was futile and should be denied.  *See In re Tamoxifen Citrate Antitrust Litigation*, 466 F.3d 187, 220 (2d Cir. 2006) ("where amendment would be futile, denial of leave to amend is proper.").  Thus, that the court permitted the Third Counterclaim to proceed on Defendant's motion to amend is irrelevant to the present issues raised by Plaintiffs.

that Plaintiffs' insistence that Defendant must plead how it was injured or elaborate on

the nature of such injury, Plaintiffs seek to hold Defendant "to a higher pleading

standard that what is required under *Twombly* and its progeny." *Id*. at 8.  In further

support of judgment on the pleadings, Plaintiffs maintain that the "competitive injury"

must be pleaded with "more than labels or conclusions."  Plaintiffs' Reply at 2-4.

Plaintiffs, however, maintain that because Defendant has marketed and sold

cradle swing products despite Fisher-Price's alleged false markings, and does not claim

the alleged false markings have prevented or discouraged Defendant from selling its

own cradle swing products, Defendant has not, and cannot, allege any competitive

injury under the Act.  Plaintiffs' Memorandum at 7.  Defendant maintains that its

allegations regarding competitive injury are substantially similar to those held sufficient

to survive a motion to dismiss in the only relevant opinion published since the

enactment of the Act that addresses this issue, *i.e.*, *Fasteners for Retail, Inc. v.*

*Andersen*, 2011 WL 5130445 6 (N.D.Ill. Oct. 28, 2011).  Defendant's Response at 10.

Defendant further maintains that the "competitive injury" standard in other contexts is

more relaxed than that demanded by Plaintiffs.  *Id*. at 11-13.  In further support of their

motion, Plaintiffs argue that Defendant has misrepresented the facts of *Fasteners for*

*Retail* with regard to "competitive injury" because in that case, the defendant also

alleged it had been injured because the allegedly falsely marked products deterred

customers from using competing products.  Plaintiffs' Response at 3.

In *Fasteners for Retail*, the court held that a defendant's allegations, asserted in

a counterclaim, that the plaintiff's false marking "is likely to, or at least has the tendency

to, discourage and deter persons and companies, such as [the defendant] from

commercializing competing products and deters consumers from using competing products," sufficient to survive the plaintiff's motion to dismiss. *Fasteners for Retail, Inc.* 2011 WL 5130445, at * 6.  The court surmises that the language "deters customers from using competing products" was construed as establishing the defendant was competitively injured each time a consumer chose to purchase the plaintiff's allegedly falsely marked product rather than a competing product manufactured by the defendant.

As enacted, § 292(b) is properly construed as providing for a "competitive injury" claim to be brought by a party seeking to gain entry into a market that has been wrongfully blocked by a competitor's falsely marking of products with inapplicable patent markings.  Although the term "competitive injury" is not defined in the Act, its legislative history establishes that the "competitive injury" cause of action was intended as a replacement for *qui tam* actions, the litigation of which was subject to abuse by those with no desire to compete in any particular market, but who viewed a false marking *qui tam* action as merely a for-profit endeavor.  In particular,

> The America Invents Act reins in abuses that are reflected in a recent surge in false marking litigation.  It allows such suits to be brought only by those parties who have actually suffered a competitive injury as a result of false marking.  Currently, such suits are often brought by parties asserting no actual competitive injury from the marking – or who did not even patent or manufacture anything in a relevant industry.  Many cases have been brought by patent lawyers themselves claiming the right to enforce a fine of $ 500 for every marked product.

157 Cong.  Rec.  S5319 -5321, at 5320 (daily ed. Sept.  6, 2011, S5319) (statement of Sen. Kyl). Defendant's Exh. D .

The court therefore considers whether Defendant has plausibly alleged it suffered a "competitive injury as § 292 requires.

18

In the absence of any enacted definitional elements, the court is guided by the plain meaning of Congress's enactment.[9] *Natural Resources Defense Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) ("If the plain meaning of a statute is susceptible to two or more reasonable meanings, *i.e.*, if it is ambiguous, then a court may resort to the canons of statutory construction."). "Competitive," according to Webster's,[10] in the context of economic activity, means a market condition wherein two or more persons or organizations "exist in rivalry of economic endeavor and without the presence of monopoly or collusion." Webster's Third New International Dictionary at 464. Thus, a competitor is "one that is engaged in selling or buying goods or services in the same market as another." *Id*. "Injury," of course, broadly implies a right of recovery for loss or impairment of a right or damage to property. *Id*. at 1164. Accordingly, given the plain meaning of § 292, by reference to its terms, in order to withstand Plaintiffs' motion against Defendant's Third Counterclaim, Defendant must allege sufficient facts to plausibly establish that, as a result of Fisher-Price's mismarking of its cradle swings with the '548 patent, Defendant's ability to compete against

---

[9] The allegations in the Third Counterclaim that Defendant identifies as setting forth the basis for its "competitive injury" claim include

¶ 65.   Upon information and belief, Fisher-Price intentionally included the '548 patent on the Accused Fisher-Price Swing Products in an attempt to prevent competitors from making or selling similar or competing products.

¶ 66.   Each false marking on Accused Fisher-Price Swing Products is likely to, or at least has the potential to, discourage or deter persons or companies from making or selling similar or competing products.

¶ 68.   Thus, by marking and continuing to mark the Accused Fisher-Price Swing Products with the '548 patent without a reasonable belief that such articles were covered by the patents, Fisher-Price has . . . discouraged competition and innovation in competing products.

Defendant's Response at 10 (quoting Amended Answer ¶¶ 65, 66 and 68).

[10] Webster's Third New International Dictionary Unabridged.

Plaintiffs in the marked for purchasers of such products was impaired, resulting in tangible economic loss to Defendant.[11]  Defendant's allegations, however, fail to do so.

First, the pleadings indicate Defendant is, and apparently has, engaged in actual competition against Fisher-Price in the relevant market.  Specifically, given Defendant's First Counterclaim alleges "[a]n actual case or controversy exists between Plaintiffs and Kids II as to whether Kids II infringes the '548 patent," Amended Answer § 35, and seeks a declaration that its conduct in selling the competing cradle swings does not infringe on the '548 patent, Amended Answer ¶¶ 36-37, Defendant has admitted directly competing with Plaintiffs in the cradle swing market.  Because Defendant is competing in the cradle swing market, it is difficult for the court to perceive how Defendant has in fact been "competitively injured" by any "false marking" by Fisher-Price with the ' 548 patent.  Rather, that Defendant has manufactured and sold competing products, allegedly in violation of the '548 patent, establishes that Defendant has not been deterred or discouraged from manufacturing competing cradle swing products in the relevant market for such products.  Thus, Defendant has not, presumably because it cannot, alleged that Fisher-Price's asserted mismarking has prevented or frustrated Defendant's efforts to enter this market.

Second, no factual allegation endeavors to allege how, if Defendant, consistent

---

[11] The court notes that the phrase "competitive injury" has been similarly defined in the context of other market-regulating statutes.  *See, e.g.*, *Famous Horse Inc. v. 5th Avenue Photo Inc.*, 624 F.3d 106, 113-14 (2d Cir. 2010) (holding allegation that plaintiff clothing retailer lost sales to lower-priced counterfeit garments sold by defendant wholesaler constituted a "competitive injury" for a Lanham Act trademark infringement claim); and *United Magazine Company, Inc. v. Curtis Circulation Company*, 279 Fed.Appx. 14, 17-18 (2d Cir. 2008) (holding plaintiff wholesaler lacked standing to bring claim against national distributor for violation of Robinson-Patman Price Discrimination Act based on defendant distributor's alleged policy favoring plaintiff wholesaler's competitor where wholesaler and alleged competitor, although direct competitors for some bid contracts, were not in head-to-head competition for the subject bid, such that the alleged price discrimination did not substantially affect competition between the two competitors).

with and as admitted by Defendant's pleading, is presently engaged in such

competition, Fisher-Price's alleged mismarking has, in fact, hindered or diminished

Defendant's success in such competition, or threatens to proximately force Defendant

to exit the market.  As such, Defendant has not presently alleged sufficient facts making

it plausible to find Plaintiff's alleged mismarking has resulted in Defendant suffering a

competitive injury, a required element of recovery under § 292.

Nor is there any merit to Defendant's assertion, Defendant's Response at 11,

that, without discovery, it is unable to determine that it has suffered a competitive injury

attributable to the alleged false marking.  Rather, if Fisher-Price's alleged false marking

of its cradle swing products has discouraged or deterred Defendant from manufacturing

or marketing competing cradle swing products, Defendant would or should be in

possession of such information without resort to discovery from Plaintiffs.  Accordingly,

Defendant has not plausibly alleged a competitive injury claim and, furthermore, may

have pleaded itself out of court as to the Third Counterclaim.[12]

Plaintiffs' motion for judgment on the pleadings as to the Third Counterclaim

should be GRANTED without prejudice and with leave to replead within 30 days of the

date of this Decision and Order and Report and Recommendation.

---

[12] In contrast, it is not possible to discern from the opinion in *Fasteners of Retail, Inc.*, whether the products  which the defendant alleged in its counterclaim were falsely marked were the same products on which the plaintiff's patent infringement claims against the defendant were predicated.

**CONCLUSION**

Based on the foregoing, Defendant's motion seeking to stay litigation pending

reexamination of the patent-in-suit (Doc. No. 35) is DENIED; Plaintiffs motion to dismiss

for failure to state a claim or, alternatively, for judgment on the pleadings as to

Defendant's third counterclaim (Doc. No. 32) should be GRANTED, without prejudice

and with leave to replead within 30 days of the date of this Decision and Order and

Report and Recommendation.

SO ORDERED, as to Defendant's motion
seeking to stay litigation.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, as to Plaintiffs' motion
for judgment on the pleadings,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        December 21, 2011
             Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 21, 2011
            Buffalo, New York